Roger Sullivan
Allan M. McGarvey
John F. Lacey
McGarvey, Heberling, Sullivan & Lacey, P.C.
345 First Avenue East
Kalispell, MT 59901
(406) 752-5566

Attorneys for Plaintiff



## MONTANA EIGHTH JUDICIAL DISTRICT, CASCADE COUNTY

| | |
|---|---|
| MARY A. ROBERTSON,<br><br>Plaintiff,<br>v.<br><br>INTERNATIONAL PAPER COMPANY, a New York for profit corporation; CHAMPION INTERNATIONAL CORPORATION, a New York for profit corporation; ST. REGIS CORPORATION, a New York for profit corporation; J. NEILS LUMBER COMPANY, a Minnesota for profit corporation; MONTANA LIGHT & POWER COMPANY, a Montana for profit corporation; EVERETT NELSON; RALPH HEINERT; ROBINSON INSULATION COMPANY, a Montana Corporation for profit; and DOES A-Z,<br><br>Defendants. | CAUSE NO. ADV-17-0502<br><br>Gregory G. Pinski<br><br>CV-17-84-GF-BMM<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

### PARTIES

1. Plaintiff Mary A. Robertson, is a resident of Lincoln County, Libby, Montana.

2. Defendant International Paper Co. is a corporation organized and existing under the laws of New York with its principal place of business in the State of Connecticut.

3. Defendant International Paper Co. is a successor corporation which is liable

Complaint and Demand for Jury Trial    1

for the actions of Champion International Corp., St. Regis Corp. and J. Neils Corp. with respect to the claims and allegations of this Complaint.

4. Defendant Champion International Corp. is or was a corporation organized and existing under the laws of New York with its principal place of business in the State of Connecticut.

5. Defendant Champion International Corp. is a successor corporation which is liable for the actions of St. Regis Corp. with respect to the claims and allegations of this Complaint.

6. Defendant St. Regis Corp. is or was a corporation organized and existing under the laws of New York with its principal place of business in the State of New York and is a successor corporation which is liable for the actions of J. Neils Corp. with respect to the claims and allegations of this Complaint.

7. St. Regis Corporation is a New York corporation which was dissolved on or about September 18, 1984. St. Regis Corp. is properly named as a defendant in this action pursuant to MCA § 35-1-935 and MCA § 35-1-937, because the dissolution of the corporation "does not take away or impair any remedy . . . against the corporation . . . for any claim or right whether or not the claim or right existed or accrued prior to dissolution."

8. Defendant Montana Light & Power, is a Montana Corporation currently inactive. At all times up to 1988, Montana Light & Power was doing business in Montana, including operating the powerhouse at the lumbermill in Libby.

9. Montana Light & Power merged into Champion International Corporation (CIC) and CIC assumed all liabilities of Montana Light & Power as a successor corporation, including claims under this complaint.

10. Defendants Everett Nelson and Ralph Heinert were managers of the corporate Wood Products Defendants.

11. Defendants International Paper Co., Champion, St. Regis Corp., J. Neils Lumber Company, Everett Nelson and Ralph Heinert, are referred to herein as "Wood Products Defendants."

12. At all times relevant to this action, Wood Products Defendants, their predecessors in interests and/or their subsidiaries and associates, engaged in logging and manufacturing operations of the forest products industry in Lincoln County, Montana.

13. Robinson Insulation Company (Robinson Insulation) is or was a Montana business corporation for profit with its principal place of business in Great Falls, Cascade County, Montana where Robinson Insulation operated a vermiculite expansion plant. Robinson Insulation engaged in conduct that resulted in the accrual of this tort action in Montana.

14. Does A - Z are corporations or persons, whose identities are unknown at this time, and whose negligence and wrongful acts caused Plaintiff's asbestos related mesothelioma.

15. Plaintiff will seek to amend her complaint when the true names and capacities of Does A - Z are ascertained.

16. Venue in this action is proper in Cascade County, Montana, because at least one of the Defendants, Robinson Insulation, engaged in tortious conduct within Cascade County and is a resident of Cascade County.

17. This Complaint is filed to protect statutes of limitations.

## GENERAL ALLEGATIONS

18. In 1963 W.R. Grace & Co. (Grace) purchased an existing vermiculite mine and mill in Libby, Montana (the Mine) from the Zonolite Company (Zonolite), in the process assuming all liabilities of Zonolite. Grace operated the Mine from 1963 until 1990. The vermiculite was intermixed with a highly toxic form of asbestos. The extraction of vermiculite from the ground and processing of it generated substantial airborne dust containing asbestos. The dust was produced at the mine site, as well as in the town of Libby where expansion, bagging, storage and transport facilities were located. Substantial amounts of dust were deposited onto and contaminated the timber in the area, which was purchased and processed by Wood Products Defendants.

19. The Plaintiff was the spouse and parent of separate lumbermill workers, a homeowner, and a member/resident of the community of Libby, Montana, and/ as such

was distinctly exposed to asbestos in unique exposure events and in a wide variety of temporally separated, geographically distinct, and highly differentiated routes and circumstances. While Plaintiff had repeated or continuous exposures, Plaintiff's individual exposure is unique in time, location, form, and degree of asbestos contact, and as a result of which Plaintiff has been diagnosed with asbestos disease. Dates of Plaintiff's residence in the Libby area and exposure, including events of injurious exposure between July 1, 1973 and July 1, 1975 are: 1955 to date.

20. Plaintiff's husband was an employee of Wood Products Defendants, as was her son.

21. At all times Plaintiff was ignorant of the nature and extent of the life threatening risks and injury involved, and would not have continued to be exposed to such an environment if she had known the true facts.

22. Neither employees of Wood Products Defendants nor the Grace/Zonolite workers were provided with coveralls or showers. As a result workers went home and into the community with asbestos dust on their clothing and in their cars, thereby extending the asbestos exposure. Similarly, invisible asbestos fibers from the mining operations and the lumbermill infiltrated a broad variety of Libby area work sites, forests, recreation areas, homes, gardens, and numerous other distinct locations, resulting in hundreds of distinct routes and circumstances of exposure.

23. As a result of failing to control dust from the mining, milling, processing, bagging, transport and a variety of uses of the vermiculite, workers, family members, members of the community, and others were exposed to the highly toxic asbestos.

24. Without knowledge of the nature and extent of the asbestos hazard, Plaintiff was denied, in the unique circumstances of her exposures, the options of avoiding exposure, demanding protective devices, demanding safer operations, changing jobs, or protecting herself and her family.

### FIRST CLAIM
### Strict Products Liability v. Wood Products Defendants

25. All paragraphs above are incorporated by this reference.

26. At all times relevant to this action, Plaintiff lived in or around the town of Libby. She shopped, visited and enjoyed recreation in the town of Libby and its vicinity as indicated above.

27. At times relevant to this action, the Wood Products Defendants were engaged in the business of manufacturing, fabricating, modifying, expanding, labeling, distributing, supplying, selling, marketing, packaging, and/or advertising products containing vermiculite. Said vermiculite was laced with deadly asbestos.

28. The Wood Products Defendants knew and intended that the above referenced vermiculite and asbestos contaminated products would be used without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

29. The Wood Products Defendants distributed and/or sold said asbestos-laced vermiculite products to the public, to the Plaintiff, and to one or more of Plaintiff's employers.

30. Said asbestos-laced vermiculite products were defective and unreasonably dangerous for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death to humans. The defect existed in the said products at the time they left the possession of the Wood Products Defendants. Said products did, in fact, cause injury and damage to Plaintiff, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and unreasonably dangerous for use.

31. Plaintiff did not know of the substantial danger of using said asbestos-laced vermiculite products, nor was said danger readily recognizable by her. The Wood Products Defendants further failed to adequately warn of the risk of contamination to which Plaintiff was exposed.

32. As a direct and proximate result of the unlawful actions of the Wood Products Defendants, and as a direct and proximate result of exposure to the Wood Products Defendants' unreasonably dangerous asbestos vermiculite products, Plaintiff suffers from asbestos related mesothelioma and has incurred the damages alleged herein.

## SECOND CLAIM
## Common Law Strict Liability v. Wood Products Defendants

33.  All paragraphs above are incorporated by this reference.

34.  The Wood Products Defendants failed to control asbestos contaminated vermiculite used in the operation of their business thereby causing Plaintiff to be exposed to asbestos, an extra hazardous and abnormally dangerous substance.

35.  The Wood Products Defendants engaged in abnormally dangerous activities thereby causing the release of asbestos contamination and exposure of Plaintiff to deadly asbestos. The Wood Products Defendants' business activities in handling, storing, transporting, loading, and using asbestos were abnormally dangerous in that:

- (a) said business activities created a high degree of prior, present, and continuing contamination in the form of exceedingly toxic asbestos, which created a high degree of risk of harm to Plaintiff and others;
- (b) there was and is a strong likelihood that the harm resulting from said business activities and exposure to asbestos is great;
- (c) the risk of harm caused by the Wood Products Defendants storing, handling, transporting, loading, and using asbestos contaminated vermiculite cannot be reasonably eliminated for those humans living and working in proximity to the Wood Products Defendants abnormally dangerous business activity;
- (d) said business activities are not a matter of common usage;
- (e) the Wood Products Defendants' abnormally dangerous business activities were carried on within the town of Libby and adjacent areas, which were places that were inappropriate for the release of asbestos contamination; and
- (f) The dangerous attributes of the Wood Products Defendants' business activities completely outweigh the value of those activities to the community.

36.  The dangers of the Wood Products Defendants' business activities for the locality where Plaintiff resided, worked, or remained were so great that despite any usefulness of their activities and of the asbestos contaminated vermiculite under its control, the Wood Products Defendants should be required as a matter of law to pay for any harm caused.

37. The Wood Products Defendants are strictly liable to the Plaintiff for damages caused by Plaintiff's exposure to deadly asbestos caused by the Wood Products Defendants' abnormally dangerous business activities.

38. As a direct and proximate result of the Wood Products Defendants' abnormally dangerous business activities, Plaintiff was exposed to unreasonably dangerous and hazardous materials, contracted mesothelioma and has incurred the damages alleged herein.

## THIRD CLAIM
### Negligence v. Wood Products Defendants

39. All paragraphs above are incorporated by this reference.

40. Plaintiff's husband and son were employed by Wood Products Defendants' logging and manufacturing operations of the forest products industry in Lincoln County, Montana, throughout the period of 1955 to 1993.

41. Throughout the time of Plaintiff's husband's and son's employment, Wood Products Defendants allowed numerous asbestos containing materials and products to enter and remain at the lumbermill where Plaintiff's family worked.

42. Throughout the time of Plaintiff's husband's and son's employment, they worked in an environment that caused them and her to be exposed to asbestos dust and vermiculite dust (hereafter referred to as "asbestos").

43. The Wood Products Defendants, including through agents and managers, knew or should have known that the extended exposure to asbestos experienced by Plaintiff's husband and son was unreasonably dangerous and hazardous to them and to her and would cause and was causing injury.

44. The Wood Products Defendants negligently failed to study the extent of the asbestos hazard.

45. The Wood Products Defendants negligently failed to warn Plaintiff or her husband and son of the abnormally dangerous and highly harmful effects of exposure to asbestos, or of the highly dangerous effects of smoking and asbestos exposure.

46. The Wood Products Defendants negligently operated the Lincoln County

facility, failed to undertake reasonable precautions to eliminate exposure to asbestos, failed to provide warnings, and otherwise failed to exercise reasonable care to meet the duties described herein.

47. The Wood Products Defendants negligently failed to provide Plaintiff with protective equipment and safety appliances to protect her from exposure to the abnormally dangerous and highly harmful asbestos dust.

48. The Wood Products Defendants negligently failed to ensure that any asbestos dust remained at the logging and manufacturing facilities and was not spread to the homes, automobiles and other personal property of Plaintiff.

49. At all times, Plaintiff and her family were ignorant of the nature and extent of the life threatening risks and injury involved. Without knowledge of the nature and extent of the asbestos hazard, the Plaintiff and her family were denied the options of avoiding exposure, demanding protective devices, demanding safer operations, or changing jobs.

50. Due to the negligence of the Wood Products Defendants, as above indicated, Plaintiff was exposed to asbestos generated by the Wood Products Defendants.

51. As a direct and proximate result of the conduct of the Wood Products Defendants, Plaintiff was exposed to asbestos, contracted mesothelioma and has incurred the damages alleged herein.

## FOURTH CLAIM
### Negligence v. Robinson Insulation

52. All paragraphs above are incorporated by this reference.

53. For many years, Defendant Robinson Insulation obtained asbestos contaminated vermiculite from Libby, Lincoln County, Montana. Said asbestos contaminated vermiculite was transported by rail from Lincoln County to Great Falls, Cascade County, Montana, where Defendant Robinson Insulation expanded the asbestos contaminated vermiculite and processed it into various manufactured products.

54. After expanding the deadly asbestos contaminated vermiculite and processing it into manufactured products, Robinson Insulation sold said vermiculite and

vermiculite products to the J. Neils/St. Regis Champion lumbermill in Libby and to others for use and for resale in Libby, Montana. Said expanded vermiculite and vermiculite products were transported from Great Falls back to Libby and delivered to the said lumbermill and to other sites in Libby.

55. Plaintiff was exposed to Defendant Robinson Insulation's unreasonably dangerous asbestos contaminated products, which Robinson Insulation wrongfully placed in the stream of commerce for use and consumption by the general public.

56. During Plaintiff's period of exposure to asbestos and contaminated vermiculite, which was generated and released by Robinson Insulation's business activities, Robinson Insulation knew that extended exposure to asbestos was unreasonably dangerous and hazardous to an individual's health. Nevertheless, Robinson Insulation concealed and failed to disclose such knowledge to their employees, the public, and the Plaintiff. Robinson Insulation gave no indication that it was unsafe and in fact a serious health hazard for Plaintiff to be exposed to asbestos generated and released by Robinson Insulation's business activities. Plaintiff was at all times ignorant of the nature and extent of the life threatening risk involved in exposure to the asbestos generated and released by Defendant's business activities.

57. Robinson Insulation owed the Plaintiff a duty to act with reasonable care concerning their business operations, so as not to jeopardize her health and welfare from exposure to its asbestos contamination and asbestos products.

58. Robinson Insulation breached its duty of care by negligently, carelessly, and recklessly generating, handling, storing, releasing, disposing of, and failing to control and contain unreasonably dangerous and hazardous asbestos created by and/or resulting from its for profit business operations.

59. Although Robinson Insulation knew or had ample reason to know that its acts or omissions created a high degree of harm to the Plaintiff, it nevertheless deliberately acted in conscious disregard of and indifference to the risk imposed upon the Plaintiff by her continued exposure to asbestos.

60. As a direct and proximate result of Plaintiff's exposure to asbestos-laced

vermiculite generated and released by Robinson Insulation's business activities, Plaintiff suffers from asbestos related mesothelioma and has incurred the damages alleged herein.

## FIFTH CLAIM
### Strict Products Liability v. Robinson Insulation

61. All paragraphs above are incorporated by this reference.

62. At times relevant to this action, Defendants Robinson Insulation was engaged in the business of manufacturing, fabricating, modifying, expanding, labeling, distributing, supplying, selling, marketing, packaging, and/or advertising multiple products containing vermiculite. Said vermiculite was laced with deadly asbestos.

63. Defendant Robinson Insulation knew and intended that the above referenced vermiculite and asbestos contaminated products would be used without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

64. Defendant Robinson Insulation distributed and/or sold said asbestos-laced vermiculite products to the public, to the Plaintiff, and to one or more of Plaintiff's employers.

65. Said asbestos-laced vermiculite products were defective and unreasonably dangerous for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death to humans. The defect existed in the said products at the time they left the possession of Defendant Robinson Insulation. Said products did, in fact, cause injury and damage to Plaintiff, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and unreasonably dangerous for use.

66. Plaintiff did not know of the substantial danger of using said asbestos-laced vermiculite products, nor was said danger readily recognizable by her. Defendant Robinson Insulation further failed to adequately warn of the risk of contamination to which Plaintiff was exposed.

67. As a direct and proximate result of the unlawful actions of Defendant Robinson Insulation and as a direct and proximate result of exposure to Robinson

Insulation's unreasonably dangerous asbestos contaminated vermiculite products, Plaintiff suffers from asbestos related mesothelioma and has incurred the damages alleged herein.

## SIXTH CLAIM
### Does A-Z

68. All paragraphs above are incorporated by this reference.

69. Does A-Z are corporations or persons unknown at this time whose negligence and wrongful acts caused asbestos disease in the Plaintiff. Plaintiff will seek to amend her complaint when the true names and capacities of Does A-Z are ascertained.

## DAMAGES

70. All paragraphs above are incorporated by this reference.

71. As a direct and proximate result of the acts of the Defendants, the Plaintiff has suffered and will suffer:

    a. Loss of enjoyment of established course of life;
    b. Loss of services which can no longer be performed;
    c. Physical, mental and emotional pain and suffering;
    d. Medical expenses, rehabilitation expenses and related expenses;
    e. Loss of insurability for medical coverage;
    f. Great grief and sorrow.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for damages against the Defendants as follows:

1. Reasonable damages for lost enjoyment of established course of life, past and future;

2. Reasonable damages for loss of services which can no longer be performed;

3. Reasonable damages for physical, mental and emotional pain and suffering, past and future;

4. Reasonable damages for medical expenses, rehabilitation expenses, and related expenses incurred to date and reasonably certain to be incurred in the future;

5. Advance payment of past and present medical expenses and special

damages not reasonably in dispute;

6. Reasonable damages for grief and sorrow;
7. For costs of suit; and
8. For such further relief as is just and equitable under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

DATED this 17th day of July, 2017.

McGARVEY, HEBERLING, SULLIVAN & LACEY, P.C.

By: _____
ROGER SULLIVAN
ALLAN McGARVEY
JOHN F. LACEY
Attorneys for Plaintiff